1  Daniel C. Girard (State Bar No. 114826)
   dcg@girardgibbs.com
2  Jonathan K. Levine (State Bar No. 220289)
   jkl@girardgibbs.com
3  Aaron M. Sheanin (State Bar No. 214472)
   ams@girardgibbs.com
4  Christina H. C. Sharp (State Bar No. 245869)
   chc@girardgibbs.com
5  **GIRARD GIBBS LLP**
   601 California Street, Suite 1400
6  San Francisco, CA 94108
   Telephone: (415) 981-4800
7  Facsimile: (415) 981-4846

8  Counsel for Individual and Representative Plaintiff Stephen Lowe

9

10              **UNITED STATES DISTRICT COURT**

11          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13  STEPHEN LOWE, Individually
    And On Behalf of All Others Similarly Situated,

14                                          Case No. _____

    Plaintiff,
15
                                            **CLASS ACTION COMPLAINT FOR**
    v.                                      **VIOLATION OF THE FEDERAL**
16                                          **SECURITIES LAWS**

    OPPENHEIMER CALIFORNIA MUNICIPAL
17  FUND, OPPENHEIMERFUNDS, INC.,
    OPPENHEIMERFUNDS DISTRIBUTOR,
18  INC., BRIAN F. WRUBLE, DAVID K.
    DOWNES, MATTHEW P. FINK, PHILLIP A.
19  GRIFFITHS, MARY F. MILLER, JOEL W.
    MOTLEY, RUSSELL S. REYNOLDS, JR.,
20  MARY ANN TYNAN, JOSEPH M. WIKLER,
    PETER I. WOLD, BRIAN W. WIXTED,
21  CLAYTON K. YEUTER, JOHN V. MURPHY,
    ROBERT G. GALLI, KENNETH A.
22  RANDALL, EDWARD V. REGAN, RONALD
    H. FIELDING, DANIEL G. LOUGHRAN,
23  SCOTT COTTIER, TROY E. WILLIS,
    RICHARD STEIN, and MARK S.
24  VANDEHEY,
25
                                Defendants.
26

27

28

                          - 1 -

Plaintiff, on behalf of himself and all others similarly situated, alleges the following upon personal knowledge as to himself and his own acts, and upon the investigation of his counsel, which included, among other things, interviews of potential witnesses, a review and analysis of Defendants' public documents, filings with the United States Securities and Exchange Commission ("SEC"), and press and media reports regarding Oppenheimer California Municipal Fund. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal class action on behalf of all persons and entities who purchased or held Class A, Class B or Class C shares of Oppenheimer California Municipal Fund on or after September 27, 2006 (the "Class Period"), and who were damaged thereby. Plaintiff seeks to pursue remedies under the Securities Act of 1933 (the "Securities Act") and the Investment Company Act of 1940 (the "ICA").

## JURISDICTION AND VENUE

2. Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act, and Section 44 of the ICA.

3. Venue is proper in this District under 28 U.S.C. § 1391(b), because Defendants conduct substantial business within this District. Many of the alleged acts, transactions, and conduct complained of, including the dissemination of public filings concerning Oppenheimer California Municipal Fund occurred in this District.

4. In connection with the acts alleged in this Complaint, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the mails, telephone communications, and the facilities of the national securities exchanges.

## THE PARTIES

4. Plaintiff Stephen Lowe ("Plaintiff"), as set forth in his certification, which is attached hereto and incorporated by reference herein, purchased shares of the Oppenheimer California Municipal Fund during the Class Period and was damaged thereby.

5. Defendant Oppenheimer California Municipal Fund (the "Fund") is registered under the Investment Company Act of 1940 as a non-diversified, open-ended management investment company.

The Fund is a mutual fund that describes itself as seeking "as high a level of current interest income exempt from federal and California income taxes for individual investors as is consistent with preservation of capital." The Fund was organized as a Massachusetts business trust in 1988 and maintains its principal executive offices located in Centennial, Colorado. The Fund and its Board of Trustees are responsible for preparing documents pertaining to the Fund including any Prospectus or Statement of Additional Information, filing those documents with the SEC, and disseminating those documents to investors in the Fund.

6. Defendant OppenheimerFunds, Inc. (the "Manager") is a Colorado corporation with its principal executive offices located in New York, New York. The Manager is wholly-owned by Oppenheimer Acquistion Corp., a holding company controlled by Massachusetts Mutual Life Insurance Company. The Manager provides investment advisory and management services to the Fund under an investment advisory agreement between the Manager and the Fund. The Manager selects securities for the Fund's portfolio and handles its day-to-day business in exchange for management fees paid by the Fund.

7. Defendant OppenheimerFunds Distributor, Inc. (the "Distributor") is a New York corporation with its principal executive offices located in New York, New York. Under a General Distributor's Agreement with the Fund, the Distributor acts as the Fund's principal underwriter in the continuous public offering of the Fund's classes of shares.

8. Defendant Brian F. Wruble ("Wruble") is, and throughout the Class Period was, a Trustee of the Fund. Defendant Wruble is, and since 2007 was, the Chairman of the Board of Trustees of the Fund. Defendant Wruble signed the Registration Statements that became effective September 27, 2006, March 8, 2007, October 31, 2007 and November 28, 2008.

9. Defendant David K. Downes ("Downes") is, and since 2007 was, a Trustee of the Fund. Defendant Downes signed the Registration Statements that became effective October 31, 2007 and November 28, 2008.

10. Defendant Matthew P. Fink ("Fink") is, and throughout the Class Period was, a Trustee of the Fund. Defendant Fink signed the Registration Statements that became effective September 27, 2006, March 8, 2007, October 31, 2007 and November 28, 2008.

1    11.    Defendant Phillip A. Griffiths ("Griffiths") is, and throughout the Class Period was, a

2    Trustee of the Fund. Defendant Griffiths signed the Registration Statements that became effective

3    September 27, 2006, March 8, 2007, October 31, 2007 and November 28, 2008.

4    12.    Defendant Mary F. Miller ("Miller") is, and throughout the Class Period was, a Trustee

5    of the Fund. Defendant Miller signed the Registration Statements that became effective September 27,

6    2006, March 8, 2007, October 31, 2007 and November 28, 2008.

7    13.    Defendant Joel W. Motley ("Motley") is, and throughout the Class Period was, a Trustee

8    of the Fund. Defendant Motley signed the Registration Statements that became effective September 27,

9    2006, March 8, 2007, October 31, 2007 and November 28, 2008.

10    14.    Defendant Russell S. Reynolds, Jr. ("Reynolds") is, and throughout the Class Period was,

11    a Trustee of the Fund. Defendant Reynolds signed the Registration Statements that became effective

12    September 27, 2006, March 8, 2007, October 31, 2007 and November 28, 2008.

13    15.    Defendant Mary Ann Tynan ("Tynan") is, and since October 1, 2008 was, a Trustee of

14    the Fund. Defendant Tynan signed the Registration Statement that became effective November 28,

15    2008.

16    16.    Defendant Joseph M. Wikler ("Wikler") is, and throughout the Class Period was, a

17    Trustee of the Fund. Defendant Wikler signed the Registration Statements that became effective

18    September 27, 2006, March 8, 2007, October 31, 2007 and November 28, 2008.

19    17.    Defendant Peter I. Wold ("Wold") is, and throughout the Class Period was, a Trustee of

20    the Fund. Defendant Wold signed the Registration Statements that became effective September 27,

21    2006, March 8, 2007, October 31, 2007 and November 28, 2008.

22    18.    Defendant Brian W. Wixted ("Wixted") is, and throughout the Class Period was, the

23    Treasurer and Principal Financial & Accounting Officer of the Fund, and a Senior Vice President and

24    Treasurer of the Manager. Defendant Wixted signed the Registration Statements that became effective

25    September 27, 2006, March 8, 2007, October 31, 2007 and November 28, 2008.

26    19.    Defendant Clayton K. Yeuter ("Yeuter") was a Trustee and the Chairman of the Board of

27    Trustees of the Fund through 2006. Defendant Yeuter signed the Registration Statement that became

28    effective September 27, 2006.

- 4 -

20. Defendant John V. Murphy ("Murphy") is, and throughout the Class Period was, the President, Principal Executive Officer and a Trustee of the Fund, and the Chairman, Chief Executive Officer and Director of the Manager. Defendant Murphy signed the Registration Statements that became effective September 27, 2006, March 8, 2007, October 31, 2007 and November 28, 2008.

21. Defendant Robert G. Galli ("Galli") was a Trustee of the Fund through 2007. Defendant Galli signed the Registration Statements that became effective September 27, 2006, March 8, 2007 and October 31, 2007.

22. Defendant Kenneth A. Randall ("Randall") was a Trustee of the Fund until 2007. Defendant Randall signed the Registration Statements that became effective September 27, 2006 and March 8, 2007.

23. Defendant Edward V. Regan ("Regan") was a Trustee of the Fund until 2007. Defendant Randall signed the Registration Statements that became effective September 27, 2006 and March 8, 2007.

24. Defendant Ronald H. Fielding ("Fielding") is, and throughout the Class Period was, a Vice President and Senior Portfolio Manager of the Fund, and a Senior Vice President of the Manager.

25. Defendant Daniel G. Loughran ("Loughran") is, and throughout the Class Period was, a Vice President and Senior Portfolio Manager of the Fund, and during the Class Period was a Vice President and Senior Vice President of the Manager.

26. Defendant Scott Cottier ("Cottier") is, and throughout the Class Period was, a Vice President and Senior Portfolio Manager of the Fund, and a Vice President of the Manager.

27. Defendant Troy E. Willis ("Willis") is, and throughout the Class Period was, a Vice President and Senior Portfolio Manager of the Fund, and an Assistant Vice President and Senior Portfolio Manager of the Manager.

28. Defendant Richard Stein ("Stein") is, and since 2007 was, a Vice President of the Fund, and throughout the Class Period was a Vice President of the Manager.

29. Defendant Mark S. Vandehey ("Vandehey") is, and throughout the Class Period was, a Vice President and the Chief Compliance Officer of the Fund, a Senior Vice President and the Chief Compliance Officer of the Manager, and a Vice President of the Distributor.

- 5 -

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1   30.   Unless specifically noted, the "Trustee Defendants" refers collectively to defendants
2   Wruble, Downes, Fink, Griffiths, Miller, Motley, Reynolds, Tynan, Wikler, Wold, Wixted, Yeuter,
3   Murphy, Galli, Randall, and Regan.

4   31.   Unless specifically noted, the "Officer Defendants" refers collectively to defendants,
5   Murphy, Fielding, Loughran, Cottier, Willis, Stein, and Vandehey.

6   ## SUBSTANTIVE ALLEGATIONS

7   32.   On September 27, 2006, the Fund filed with the SEC a Registration Statement on Form
8   N-1A, a Prospectus, and a Statement of Additional Information which was incorporated in the
9   Prospectus by reference (collectively the "September 2006 Prospectus"). According to the September
10  2006 Prospectus, the Fund's investment objective included "preservation of capital."

11  33.   The September 2006 Prospectus described the Funds' investment objective and strategies
12  as follows:

13  ABOUT THE FUND

14  The Fund's Investment Objective and Principal Investment Strategies

15
16  WHAT IS THE FUND'S INVESTMENT OBJECTIVE? The Fund seeks as high a level
    of current interest income exempt from federal and California income taxes for individual
17  investors as is consistent with preservation of capital.

18  WHAT DOES THE FUND MAINLY INVEST IN? The Fund invests mainly in
    California municipal securities that pay interest that in the opinion of counsel to the issuer
19  of each security, is exempt from federal and California individual income taxes. These
    primarily include municipal bonds (which are long-term obligations), municipal notes
20  (short-term obligations), and interests in municipal leases. Most of the securities the
    Fund buys must be "investment grade" (the four highest rating categories of national
21  rating organizations, such as Moody's). Under normal market conditions, the Fund:

22      o   attempts to invest 100% of its net assets in municipal securities,
23      o   as a fundamental policy, invests at least 80% of its assets in municipal securities,
        o   as a fundamental policy, invests at least 80% of its net assets (plus borrowings for
24          investment purposes) in California municipal securities,
25      o   the State of California and its political subdivisions (cities, towns and counties,
            for example),
26
    California municipal securities include municipal securities issued by:
27
28      o   agencies, instrumentalities (which are state-chartered corporations) and public
            authorities of the State of California, and

- 6 -

1

2

o    territories, commonwealths and possessions of the United States (for example, Puerto Rico, Guam and the Virgin Islands).

3    Securities that generate income subject to alternative minimum tax (AMT) will count towards the 80% California municipal securities requirement.

4

5    The Fund does not limit its investments to securities of a particular maturity range, and may hold both short- and long-term securities. However, it currently focuses on longer-term securities to seek higher yields. These investments are more fully explained in "About the Fund's Investments," below.

6

7    HOW DO THE PORTFOLIO MANAGERS DECIDE WHAT SECURITIES TO BUY OR SELL? In selecting securities for the Fund, the portfolio managers look primarily throughout California for municipal securities using a variety of factors which may change over time and may vary in particular cases. The portfolio managers currently look for:

8

9

10

11   o    Securities that provide high current income
     o    A wide range of securities of different issuers within the state, including different agencies and municipalities, to spread risk
     o    Securities having favorable credit characteristics
     o    Special situations that provide opportunities for value.

12

13

14   The portfolio managers may consider selling a security if any of these factors no longer applies to a security purchased for the Fund.

15

16   WHO IS THE FUND DESIGNED FOR? The Fund is designed for individual investors who are seeking income exempt from federal and California income taxes. The Fund does not seek capital gains or growth. Because it invests in tax-exempt securities, the Fund is not appropriate for retirement plan accounts or for investors seeking capital growth. The Fund is not a complete investment program.

17

18

19   34.    The September 2006 Prospectus stated that the Fund's "[f]undamental policies cannot be

20   changed without the approval of a majority of the Fund's outstanding voting shares. The Fund's

21   investment objective is a fundamental policy."

22   35.    Consistent with the Fund's investment objective of seeking interest income while

23   preserving capital, the September 2006 Prospectus represented that, "The Manager tries to reduce risks

24   by selecting a wide variety of municipal investments and by carefully researching securities before they

25   are purchased." While acknowledging some risks associated with investing in the Fund, the September

26   2006 Prospectus emphasized that the conservative nature of the Fund: "In the OppenheimerFunds

27   spectrum, the Fund is more conservative than some types of taxable bond funds, such as high yield bond

28   funds, but has greater risk than money market funds."

- 7 -

1    36. The September 2006 Prospectus also identified the following restriction on the Fund's
2    investments: "The Fund cannot invest 25% or more of its total assets in any one industry. That limit
3    does not apply to securities issued or guaranteed by the U.S. government or its agencies and
4    instrumentalities or securities issued by investment companies. Nor does that limit apply to municipal
5    securities in general or to California Municipal Securities." According to the September 2006
6    Prospectus, this industry concentration policy was a "fundamental policy" of the Fund.

7    37. On March 8, 2007, the Fund filed with the SEC a Registration Statement on Form N-1A,
8    a Prospectus, and a Statement of Additional Information which was incorporated in the Prospectus by
9    reference (collectively the "March 2007 Prospectus"). The March 2007 Prospectus contained
10   substantially similar statements about the Fund's investment of objective and strategies, fundamental
11   policies, efforts to reduce risks, and industry concentration policy as contained in the September 2006
12   Prospectus.

13   38. On October 31, 2007, the Fund filed with the SEC a Registration Statement on Form N-
14   1A, a Prospectus, and a Statement of Additional Information which was incorporated in the Prospectus
15   by reference (collectively the "October 2007 Prospectus"). The October 2007 Prospectus contained
16   substantially similar statements about the Fund's investment of objective and strategies, fundamental
17   policies, efforts to reduce risks, and industry concentration policy as contained in the September 2006
18   Prospectus and the March 2007 Prospectus.

19   39. The September 2006 Prospectus, the March 2007 Prospectus, and the October 2007
20   Prospectus were negligently prepared and contained untrue statements of material fact and/or omitted to
21   state other facts necessary to make the statements made not misleading. Among other things, these
22   Prospectuses failed to disclose the following: (1) the Fund deviated from its investment objective of
23   seeking interest income consistent with the preservation of capital by over-concentrating its holdings in
24   higher-risk, lower-quality instruments and engaging in excessive leverage and borrowing strategies; (2)
25   the Fund increased its concentration of limited types of investments, thus failing to spread and reduce
26   risk; and (3) the Fund violated its industry concentration policy by investing more than 25% of its
27   holdings in the real estate development industry including so-called "dirt bonds"—land development
28   bonds whose proceeds are used to finance the infrastructure requirements of new real estate

1  development.

2  40. An article published by *Bloomberg* on June 12, 2008, titled, "'Dirt Bonds' Soil

3  Oppenheimer in Gambits Gone Awry," began to disclose the extent of the Fund's exposure to "dirt

4  bonds." According to the article:

5  
6  
7  The $1.9 billion Oppenheimer California Municipal Fund owns more than $665 million
   of dirt bonds sold in California, including Elk Grove, said Scott Cottier, a money
   manager at OppenheimerFunds Inc. in Rochester, New York. The fund lost about 14
   percent the past year, compared with an average gain of 1.3 percent for the 419 municipal
   bond mutual funds tracked by Bloomberg.

8  
9  Dirt Bonds are a bargain because investors will eventually be paid, even if some
   borrowers miss payments, Cottier said.

10  
11  "The only people that lose money are the people who sell their bonds," Cottier said.
    "Demand for real estate in California over the long-term is very high."

12  41. Defendant Cottier's comments in the *Bloomberg* article demonstrate that the Fund

13  engaged in riskier investment strategies at the expense of its stated investment goal of "preservation of

14  capital." Notably, the September 2006 Prospectus, the March 2007 Prospectus, and the October 2007

15  Prospectus failed to disclose that the Fund's investment strategies depended upon holding long-term dirt

16  bonds which may be at risk for non-payment of periodic interest, and that any investment in the Fund

17  was subject to increased risk in a liquidity-challenged market, where the Fund would be forced to sell

18  illiquid securities at a loss in order to meet shareholder redemption requests.

19  42. On September 22, 2008, the Fund published an Annual Report for the period ended July

20  31, 2008. In the Annual Report, the Fund acknowledged the extent of its investments in dirt bonds:

21  "During this reporting period, the Fund increased its diverse holdings in land development bonds ('dirt

22  bonds'), whose proceeds finance the infrastructure requirements of new real estate development. These

23  Special Tax and Special Assessment holdings represented about one-third of the Fund's market value as

24  of July 31, 2008." The Fund also acknowledged in the Annual Report that its holdings of single-family

25  housing and multifamily housing represented 9.3% of the Fund's market value as of July 31, 2008. As a

26  result, the Fund's investments in the real estate development industry exceeded 40% of its total assets in

27  violation of the Fund's industry concentration policy.

28  43. The Fund also violated its primary investment objective of pursuing current interest

- 9 -

income in a manner consistent with preservation of capital by increasing its investment in dirt bonds, other speculative bonds, and securities with high credit risk. According to a report published by Morningstar on October 16, 2008:

> **Oppenheimer California Municipal's volatility hasn't paid off in the long run.**
> This gutsy fund's performance has been hard to swallow lately. With a loss of 32.4% through the year to date (as of Oct. 15, 2008), it's the worst-performing fund in the municipal California long category and significantly trails its typical peer by nearly 21 percentage points.
>
> Periods of extreme performance are not new for this fund given its unconventional approach. Its experienced management team--managed on a day-to-day basis by Scott Cottier--tries to take advantage of pricing inefficiencies in the bond market, as many funds do, but pursues current income more aggressively than most. That means the fund has a bigger stake invested at the lower end of the credit spectrum, where more-speculative bonds can compensate investors for their added risk by offering higher yields. Indeed, the fund had roughly 78% in bonds rated BBB and below (including nonrated bonds) as of June 30, 2008, which is 5 times more than the category median. Such a large stake in low-quality fare makes the fund more volatile in general and is particularly costly in times like these when there has been a flight to high-quality bonds. Of particular concern is the fund's investment in "dirt deals," which are contracts for land developments that have yet to be built. These bonds tend to be nonrated and are especially risky given the depressed housing market in California.

44. On October 21, 2008, the Fund filed with the SEC a Prospectus Supplement ("October 2008 Supplement") which described additional risks of investing in the Fund that it had not previously disclosed. In a section titled, "UNUSUAL VOLATILITY AND LACK OF LIQUIDITY IN THE MUNICIPAL BOND MARKETS IN 2008," the October 2008 Supplement stated:

> Municipal bonds are traded in the "over-the-counter" market among dealers and other large institutional investors. In the latter months of 2008 that market has been subject to greater volatility than it has historically experienced. Liquidity in the municipal bond market (the ability to buy and sell bonds readily) has been reduced, as it has been in other fixed income markets, in response to overall economic conditions and credit tightening. During times of reduced market liquidity, such as at the present, the Fund may not be able to sell bonds readily at prices reflecting the values at which the bonds are carried on the Fund's books. Sales of large blocks of bonds by market participants, such as the Fund, that are seeking liquidity can further reduce bond prices in an illiquid market. The Fund may seek to make sales of large blocks of bonds to meet shareholder redemption requests, or it may be required to raise cash to re-collateralize, unwind or "collapse" trusts that issued inverse floaters to the Fund or to make payments to such trusts to enable them to pay for tenders of the short-term securities they have issued, if the remarketing agents for those securities are unable to sell those short-term securities in the marketplace to other buyers (typically tax exempt money market funds).

- 10 -

45. The October 2008 Supplement provided additional disclosures about: the Fund's reliance on borrowing and leverage "for investment related purposes," and "to meet redemption obligations or for temporary and emergency purposes"; the extent of the Fund's investment in derivative instruments called "inverse floaters" that are highly sensitive to interest-rate shifts; and the additional risks associated with these techniques and investments.

46. On November 28, 2008, the Fund filed with the SEC a Registration Statement on Form N-1A, a Prospectus, and a Statement of Additional Information which was incorporated in the Prospectus by reference (collectively the "November 2008 Prospectus"). The November 2008 Prospectus contained substantially similar statements about the Fund's investment of objective and strategies, fundamental policies, efforts to reduce risks, and industry concentration policy as contained in the September 2006 Prospectus, the March 2007 Prospectus, and the October 2007 Prospectus.

47. The November 2008 Prospectus was negligently prepared and contained untrue statements of material fact and/or omitted to state other facts necessary to make the statements made not misleading for the same reasons discussed above with respect to the earlier Prospectuses.

48. The November 2008 Prospectus also disclosed certain risks associated with investing in dirt bonds, and acknowledged that the Fund had revised its industry concentration policy such that the Fund would not consider "dirt bonds" to be part of any industry. The November 2008 Prospectus stated the following:

> **Municipal Sector Concentration.** While the Fund's fundamental policies do not allow it to concentrate its investments (that is, to invest more than 25% of its total assets) in a single industry, certain types of municipal securities are not considered a part of any "industry" under that policy. Examples of these types of municipal securities include: general obligation, general appropriation, municipal leases, special assessment and special tax bonds. Therefore, the Fund may invest more than 25% of its total assets in these types of municipal securities, which may finance similar types of projects or from which the interest is paid from revenues of similar types of projects. "Similar types of projects" are projects that are related in such a way that economic, business or political developments tend to have the same impact on each similar project. For example, a change that affects one project, such as proposed legislation on the financing of the project, a shortage of the materials needed for the project, or a declining economic need for the project, would likely affect all similar projects, thereby increasing market risk. Thus, market or economic changes that affect a security issued in connection with one project also would affect securities issued in connection with similar types of projects.

Although these types of municipal securities may be related to certain industries, because they are issued by governments or their political subdivisions, these types of municipal securities are not considered a part of any industry for purposes of the Fund's industry concentration policy.

**Special Tax or Special Assessment Bonds (Land-Secured or "Dirt" Bonds).** As discussed above, the Fund can invest more than 25% of its total assets in municipal securities for similar types of projects that are issued in connection with special taxing districts that are organized to plan and finance infrastructure development to induce residential, commercial and industrial growth and redevelopment. The bonds financed by these methods, such as tax assessment, special tax or tax increment financing generally are payable solely from taxes or other revenues attributable to the specific projects financed by the bonds without recourse to the credit or taxing power of related or overlapping municipalities. These projects often are exposed to real estate development-related risks and can have more taxpayer concentration risk than general tax-supported bonds, such as general obligation bonds. Further, the fees, special taxes, or tax allocations and other revenues that are established to secure such financings generally are limited as to the rate or amount that may be levied or assessed and are not subject to increase pursuant to rate covenants or municipal or corporate guarantees. The bonds could default if development failed to progress as anticipated or if larger taxpayers failed to pay the assessments, fees and taxes as provided in the financing plans of the projects.

In California, these special tax or special assessment bonds also are referred to as Mello-Roos Bonds. The bonds are issued under the California Mello-Roos Community Facilities Act to finance the building of roads, sewage treatment plants and other projects designed to improve the infrastructure of a community. Mello-Roos bonds are primarily secured by real estate taxes levied on property located in the community. The timely payment of principal and interest on the bonds depends on the property owner's continuing ability to pay the real estate taxes. Various factors could negatively affect this ability including a declining economy or real estate market in California.

49.     The Fund had not sought or obtained shareholder approval before revising its industry concentration policy as described in the November 2008 Prospectus.

50.     A report for the period ended January 31, 2009 by Lipper Analytical Services ("Lipper") disclosed that the Fund's holdings were far more concentrated in a limited set of investments than were the holdings of similar mutual funds in the same peer group. According to Lipper, "The Limited Tax Obligations, Miscellaneous Revenue Bonds, and Housing Revenue Bonds represent the fund's three largest issue types. Allocation of the fund's assets indicates that investments in these three largest types have a higher weighting than the corresponding holdings of the California Municipal Debt Funds classification [an average of 124 similarly classified mutual funds] by 52.8%. The fund's holdings in Limited Tax Obligations represent 40.2%, while the average fund in this class holds 7.8%." As a result,

- 12 -

the Fund's holdings were insufficiently diversified to reduce risk in contrast to the representations in the September 2006 Prospectus, the March 2007 Prospectus, the October 2007 Prospectus, and the November 2008 Prospectus.

51.    The Fund's share price collapsed beginning in September 2008, when its investment portfolio deteriorated as a result of risk-taking that placed the Fund's pursuit of interest income ahead of its goal of preserving capital. The Fund's share price on September 10, 2008 was $9.20. Three months later, on December 17, 2008, the Fund had lost more than 38% of its value to close at $5.64. The Fund presently trades in the range of $6.00 per share.

52.    Overall, the Fund lost 41.87% in 2008, compared to a loss of 11.53% for the average bond funds in Lipper's California Municipal Debt Fund category over the same time period.

53.    A report published by Morningstar on March 5, 2009 attributed the Fund's dismal performance to its excessive risk-taking, over-reliance on leverage, and substantial investment in poor quality bonds:

**Oppenheimer California Municipal's risk-taking has hurt it.**

Leverage was a 2008 buzzword as overlevered banks imploded and deepened the financial crisis. But the concept is nothing new for this fund, which has used it to generate extra income for years. The fund can both borrow to create leverage and employ "internally leveraged" inverse floating-rate notes, which are highly sensitive to interest-rate shifts. Manager Ron Fielding is drawn to the outsized tax-free income these instruments generate, but that brings outsized volatility, too. As of July 31, 2008, the fund was exposed to the market by a factor of 129% via both conventional leverage and inverse floaters. While that magnifies gains in good times, it can also prove disastrous when the market is stressed, as it was in 2008. As liquidity dried up and hedge funds began selling in earnest, long-dated munis got pummeled. The leverage inherent in the fund's borrowing and inverse floaters meant the damage was amplified.

The fund's huge stake in mid- and low-quality bonds also hurt in 2008 as investors fled to high-quality fare. As of Jan. 31, 2009, the fund had 80% in bonds rated BBB and below (including nonrated issues), a much larger dose than its typical peer (14%). Throw in the fund's exposure to risky tobacco-settlement bonds and unsecured land deals, and 2008 spelled disaster. Between its leverage and sector bets, the fund suffered a gut-wrenching 41% loss for the year—5 times worse than the category median.

## CLASS ACTION ALLEGATIONS

54.    Plaintiff brings claims under the Securities Act on behalf of himself and a class of persons (the "Securities Class") initially defined as follows: All persons or entities who purchased

1    shares of any class of the Fund on or after September 27, 2006, and who were damaged thereby.

2    55.    Plaintiff brings claims under the ICA on behalf of himself and a class of persons (the

3    "ICA Class") initially defined as follows: All persons or entities who owned shares of any class of the

4    Fund, and who were damaged thereby.

5    56.    Excluded from the Securities Class and the ICA Class are Defendants, the officers and

6    directors of the Company, at all relevant times, members of their immediate families and their legal

7    representatives, heirs, successors or assigns, any entity in which Defendants have or had a controlling

8    interest, the judge to whom this case is assigned and his or her immediate family.

9    57.    The Securities Class and the ICA Class are referred to as the "Classes" in this Complaint.

10   58.    This action has been brought and may properly be maintained, pursuant to Federal Rules

11   of Civil Procedure 23(a)(1)-(4), 23(b)(1), (2) or (3), and case law thereunder.

12   59.    **Numerosity of the Classes** – Fed. R. Civ. P. 23(a)(1): Members of the Classes and the

13   are so numerous that their individual joinder herein is impracticable. Throughout the Class Period,

14   shares of the Fund were actively traded. Although the precise number of members of the Classes and

15   their addresses are unknown to Plaintiff at this time, Plaintiff believes there to be, at a minimum,

16   thousands of members in the proposed Classes. According to the Fund's Annual Report for the period

17   ending July 31, 2008, the Fund had 149,070,765 Class A shares outstanding, 4,435,049 Class B shares

18   outstanding, and 38,125,711 Class C shares outstanding. Members of the Classes are readily

19   ascertainable from Defendants' records and may be notified of the pendency of this action by mail,

20   supplemented (if deemed necessary or appropriate by the Court) by published notice.

21   60.    **Existence and Predominance of Common Questions of Law and Fact** – Fed. R. Civ.

22   P. 23(a)(2), (b)(3): Common questions of law and fact exist as to all members of the Classes. These

23   questions predominate over the questions affecting only individual members of the Classes. These

24   common legal and factual questions include:

25      a.  Whether the federal securities laws were violated by Defendants' acts alleged herein;

26      b.  Whether Defendants made untrue statements and/or omissions of material fact in the

27          registration statements and prospectuses during the Class Period;

28      c.  Whether the Fund deviated for a fundamental policy that could only be changed by a

- 14 -

1    shareholder vote; and

2        d.   Whether Class members sustained damages and the proper measure of damages.

3        61.   **Typicality** – Fed. R. Civ. P. 23(a)(3):  Plaintiff's claims are typical of the claims of

4    members of the Classes because Defendants wrongful and unlawful conduct, as alleged herein, similarly

5    affected all members of the Classes.

6        62.   **Adequacy** – Fed. R. Civ. P. 23(a)(4):  Plaintiff is an adequate representative of the

7    Classes because his interests do not conflict with the interests of the members of the Classes he seeks to

8    represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation,

9    and Plaintiff intends to prosecute this action vigorously.  The interest of members of the Classes will be

10   fairly and adequately protected by Plaintiff and his counsel.

11       63.   **Superiority** – Fed. R. Civ. P. 23(b)(3):  The class action is superior to other available

12   means for the fair and efficient adjudication of the claims alleged in this Complaint.  The damages

13   suffered by each individual member of the Classes may be limited.  Damages of such magnitude are

14   small given the burden and expense of individual prosecution of the complex and extensive litigation

15   necessitated by Defendants' conduct.  Further, it would be virtually impossible for the members of the

16   Classes individually, to redress effectively the wrongs done to them.  Even if the members of the Classes

17   themselves could afford such individual litigation, the court system could not.  Individualized litigation

18   presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the

19   delay and expense to all parties and the court system presented by the complex legal and factual issues

20   of the case.  By contrast, the class action device presents far fewer management difficulties, and

21   provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a

22   single court.

23       64.   **Certification under Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2).**  Certification may also be

24   appropriate under Fed. R. Civ. P. 23(b)(1) and/or (b)(2) because:

25       a.   the prosecution of separate actions by individual members of the Classes would create a

26            risk of inconsistent or varying adjudications with respect to individual members of the

27            Classes which would establish incompatible standards of conduct for Defendants;

28       b.   the prosecution of separate actions by individual members of the Classes would create a

- 15 -

1    risk of adjudications with respect to them which would, as a practical matter, be
2    dispositive of the interests of other members of the Classes not parties to the
3    adjudications, or substantially impair or impede their ability to protect their interests; and
4    c.  Defendants have acted or refused to act on grounds generally applicable to the Classes,
5    thereby making appropriate final injunctive relief with respect to the Classes as a whole.

6    **NO STATUTORY SAFE HARBOR**

7    65.  The statutory safe harbor provided for forward-looking statements under certain
8    circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

9    66.  The statements pleaded herein were not identified as "forward-looking statements" when
10   made.

11   67.  To the extent there were any forward-looking statements, there were no meaningful
12   cautionary statements identifying important factors that could cause actual results to differ materially
13   from those in the purportedly forward-looking statements.

14   68.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-
15   looking statement pleaded, Defendants are also liable for any false forward-looking statements pleaded
16   herein, because, at the time each forward-looking statement was made, the speaker knew the forward-
17   looking statement was false and the forward-looking statement was authorized and/or approved by an
18   executive officer of the Fund, the Manager and/or the Distributor who knew that the forward-looking
19   statement was false.

20   **COUNT I**

21   **Violations of Section 11 of the Securities Act**
**Against the Fund, the Manager, the Distributor, and the Trustee Defendants**

22   66.  Plaintiff repeats and realleges each and every allegation contained above.  For purposes
23   of this Count, Plaintiff expressly excludes and disclaims any allegation that could be construed as
24   alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict
25   liability and/or negligence under the Securities Act.

26   67.  This Count is brought pursuant to § 11 of the Securities Act, 15 U.S.C. §77k, on behalf of
27   himself and other members of the Securities Class against the Fund, the Manager, the Distributor, and
28   the Trustee Defendants.

- 16 -

68. The Registration Statements that became effective September 27, 2006, March 8, 2007, October 31, 2007, and November 28, 2008 (collectively the "Registration Statements") were false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

69. The Fund is the registrant for the share offering. As issuer of the shares, the Fund is strictly liable to Plaintiff and the Securities Class for the misstatements and omissions.

70. The Manager was responsible for the contents and dissemination of the Registration Statements.

71. The Distributor served as the Fund's principal underwriter of the Fund's shares, and was responsible for the contents and dissemination of the Registration Statements.

72. The Trustee Defendants were responsible for the contents and dissemination of the Registration Statements. Each of the Trustee Defendants signed or authorized the signing of the Registration Statements and/or were identified in the Prospectus.

73. None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statements were true and without omissions of any material facts and were not misleading.

74. By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

75. Plaintiff and other members of the Securities Class acquired shares of the Fund pursuant and/or traceable to the Registration Statements.

76. Plaintiff and other members of the Securities Class sustained damages. At the time of their purchases of shares of the Fund, Plaintiff and other members of the Securities Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this complaint.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act
### Against the Fund, the Manager, the Distributor, and the Trustee Defendants

76. Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. For purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

77. This Count is brought pursuant to § 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of himself and other members of the Securities Class against the Fund, the Manager, the Distributor, and the Trustee Defendants.

78. Defendants assisted in the sale of shares of the Fund to Plaintiff and other members of the Securities Class by means of the defective September 2006 Prospectus, March 2007 Prospectus, October 2007 Prospectus, and November 2008 Prospectus (collectively the "Prospectuses").

79. The Prospectuses contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Securities Class who purchased shares of the Fund pursuant to the Prospectuses the duty to make a reasonable and diligent investigation of the statements contained in the Prospectuses to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectuses as set forth above.

80. Plaintiff and other members of the Securities Class did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectuses at the time they purchased shares of the Fund.

81. By reason of the conduct alleged herein, defendants violated Section 12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class sustained substantial damages in connection with their purchases of shares of the Fund. Accordingly, Plaintiff and the other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued

- 18 -

herein. Class members who have sold their shares seek damages to the extent permitted by law.

## COUNT III

### Violations of Section 15 of the Securities Act
### Against the Manager, the Trustee Defendants and the Officer Defendants

81.    Plaintiff repeats and realleges each and every allegation contained above. For purposes of this Count, Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

82.    This Count is brought pursuant to § 15 of the Securities Act, 15 U.S.C. §77o, on behalf of himself and other members of the Securities Class against the Manager, the Trustee Defendants and the Officer Defendants.

83.    The Manager was a control person of the Fund by virtue of its responsibilities for providing investment advisory and management services to the Fund, selecting the securities for the Fund's portfolio, and handling the Fund's day-to-day business.

84.    Each of the Trustee Defendants and the Officer Defendants was a control person of the Fund by virtue of his position as a trustee, director and/or senior officer of the Fund and/or the Manager, which allowed each of these Defendants to exercise control over the Fund, the Manager and their operations.

85.    The Manager and each of the Trustee Defendants and the Officer Defendants was a culpable participant in the violations of Sections 11 and 12(a)(2) of the Securities Act alleged in the Count above, based on having signed or authorized the signing of the Registration Statements, drafted the contents of the Registration Statements and/or the Prospectuses, and having otherwise participated in the process by which shares of the Fund were issued pursuant to the Registration Statements and Prospectuses.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT IV

**Violation of Section 13(a) Of The Investment Company Act Against The Fund**

69.     Plaintiff repeats and realleges each and every allegation contained above.

70.     Plaintiff brings this cause of action pursuant to Section 13(a) of the ICA, 15 U.S.C. § 80a-13(a), on behalf of himself and the ICA Class against the Fund.

71.     The Fund is a registered investment company pursuant to the ICA.

72.     The Prospectuses described Fund's investment objective as a "fundamental policy" that could not be changed without the vote of a majority of the outstanding shares of the Fund in accordance with the ICA.

73.     The Fund deviated from its investment objective by investing in securities that sought high levels of current interest income, but exposed investors to increased risks that capital would not be preserved, and did so without obtaining a vote of a majority of the outstanding shares of the Fund.

74.     The Prospectuses also described the Fund's industry concentration policy as a "fundamental policy" that could not be changed without the vote of a majority of the outstanding shares of the Fund in accordance with the ICA.

75.     In the November 2008 Prospectus, the Fund reclassified "dirt bonds" as not constituting a part of any "industry" under the Fund's industry concentration policy. By doing so, the Fund was able to invest more than 25% of its total assets in the real estate development industry without seeking shareholder approval to modify the Fund's industry concentration policy.

76.     The Fund's investments in securities that violated its investment objective and its industry concentration policy caused the Fund to lose capital. As a direct and proximate result of the Fund's deviation from its investment objective and its industry concentration policy, Plaintiff and other ICA Class members sustained substantial losses when the value of the assets of the Fund depreciated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Classes, prays for relief and judgment as follows:

A.     For an order determining that this action is properly maintained as a class action, appointing Plaintiff as lead plaintiff and his counsel as lead counsel for the Classes, and

- 20 -

certifying the him as a class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.    For an order awarding Plaintiff and members of the Classes compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongful conduct in an amount to be proven at trial;

C.    For an order awarding Plaintiff and members of the Classes rescission or a rescissionary measure of damages;

D.    For an order enjoining Defendants from continuing to engage in the violations of law, as alleged herein;

E.    For an order awarding Plaintiff and members of the Classes pre-judgment and post-judgment interest;

F.    For an order awarding Plaintiff and members of the Classes their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

G.    For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


DATED: March 23, 2008         **GIRARD GIBBS LLP**

By: _Carol M. Sheanin_

Daniel C. Girard
Jonathan K. Levine
Aaron M. Sheanin
Christina H.C. Sharp
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Counsel for Individual and Representative Plaintiff Stephen Lowe*

# ATTACHMENT A

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF
## <u>PURSUANT TO THE FEDERAL SECURITIES LAWS</u>

I, Stephen Lowe, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.     I have reviewed the complaint against OppenheimerFunds Inc. and others prepared by Girard Gibbs LLP, whom I designate as my counsel in this action for all purposes.

2.     I did not acquire any shares of the Oppenheimer California Municipal Fund at the direction of Girard Gibbs LLP or in order to participate in any private action under the federal securities laws.

3.     I am willing to serve as a lead plaintiff either individually or as part of a group. I understand that a lead plaintiff is a representative party who acts on behalf of other class members in directing the litigation, and whose duties may include testifying at deposition or trial.

4.     I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the Court pursuant to law.

5.     I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years.

6.     I understand that this is not a claim form, and that my ability to share in any recovery as a class member is not affected by my decision to serve as a representative party.

1

7.      My purchases and sales of shares of the Oppenheimer California Municipal Fund during the class period are listed in **Attachment A** to this document.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____th day of March, 2009.

_____
Stephen Lowe

2

## ATTACHMENT A

### Stephen Lowe's Transactions in the Oppenheimer California Municipal Fund
### Between September 27, 2006 and March 18, 2009

#### Individual Account

| Trade Date | Number of Shares | Price Per Share | Buy or Sell |
|---|---|---|---|
| 2/26/07 | 19950.125 | $12.03 | Bought |
| 3/27/07 | 63.384 | $11.75 | Bought |
| 4/24/07 | 76.776 | $11.73 | Bought |
| 5/22/07 | 77.472 | $11.67 | Bought |
| 6/26/07 | 79.125 | $11.47 | Bought |
| 7/24/07 | 79.437 | $11.47 | Bought |
| 8/28/07 | 85.96 | $10.64 | Bought |
| 9/25/07 | 84.731 | $10.84 | Bought |
| 10/23/07 | 84.31 | $10.94 | Bought |
| 11/27/07 | 87.617 | $10.57 | Bought |
| 12/28/07 | 89.960 | $10.34 | Bought |
| 1/22/08 | 88.711 | $10.53 | Bought |
| 2/27/08 | 99.069 | $9.68 | Bought |
| 3/26/08 | 102.609 | $9.39 | Bought |
| 4/23/08 | 101.815 | $9.51 | Bought |
| 5/28/08 | 102.205 | $9.52 | Bought |
| 6/25/08 | 106.618 | $9.17 | Bought |
| 7/23/08 | 111.662 | $8.99 | Bought |
| 8/27/08 | 110.765 | $9.11 | Bought |
| 9/24/08 | 120.903 | $8.39 | Bought |
| 10/28/08 | 152.948 | $6.67 | Bought |
| 11/26/08 | 161.265 | $6.37 | Bought |
| 12/31/08 | 182.199 | $5.68 | Bought |
| 1/28/09 | 171.886 | $6.07 | Bought |
| 2/25/09 | 168.497 | $6.24 | Bought |

#### Retirement Account

| Trade Date | Number of Shares | Price Per Share | Buy or Sell |
|---|---|---|---|
| 2/26/07 | 831.255 | $12.03 | Bought |
| 3/27/07 | 2.641 | $11.75 | Bought |
| 4/24/07 | 3.199 | $11.73 | Bought |
| 5/22/07 | 3.236 | $11.67 | Bought |
| 6/26/07 | 3.296 | $11.47 | Bought |
| 7/24/07 | 3.316 | $11.47 | Bought |
| 8/28/07 | 3.586 | $10.64 | Bought |

| 9/25/07 | 3.535 | $10.84 | Bought |
|---------|-------|--------|--------|
| 10/23/07 | 3.510 | $10.94 | Bought |
| 11/27/07 | 3.648 | $10.57 | Bought |
| 12/28/07 | 3.749 | $10.34 | Bought |
| 1/22/08 | 3.698 | $10.53 | Bought |
| 2/27/08 | 4.127 | $9.68 | Bought |
| 3/26/08 | 4.269 | $9.39 | Bought |
| 4/23/08 | 4.240 | $9.51 | Bought |
| 5/28/08 | 4.259 | $9.52 | Bought |
| 6/25/08 | 4.432 | $9.17 | Bought |
| 7/23/08 | 4.646 | $8.99 | Bought |
| 8/27/08 | 4.610 | $9.11 | Bought |
| 9/24/08 | 5.039 | $8.39 | Bought |
| 10/28/08 | 6.373 | $6.67 | Bought |
| 11/26/08 | 6.719 | $6.37 | Bought |
| 12/31/08 | 7.595 | $5.68 | Bought |
| 1/28/09 | 7.161 | $6.07 | Bought |
| 2/25/09 | 7.008 | $6.24 | Bought |